IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CONSTANCE WESTFALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-00874-O |
| | § | |
| JOSE LUNA, et al., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion for Summary Judgment (ECF No. 243), filed

June 26, 2019; Plaintiff's Response (ECF No. 247), filed July 17, 2019; and Defendants' Reply

(ECF No. 251), filed July 31, 2019. Having considered the motion, briefing, evidence, record, and

applicable law, the Court **DENIES** Defendants' Motion for Summary Judgment (ECF No. 243).

## I.    BACKGROUND

On October 30, 2018, the United States Court of Appeals for the Fifth Circuit issued its

mandate in this case, affirming in part, dismissing in part, and reversing and remanding in part the

Court's entry of summary judgment in favor of Defendants on all claims brought by Plaintiff

Constance Westfall ("Plaintiff" or "Westfall"). [1] *See* Fifth Cir. Judgment, ECF No. 132. The Fifth

---

[1] Plaintiff's appeal followed the Court's entry of summary judgment in favor of Defendants on all her
claims, including for false arrest, excessive force, First Amendment retaliation, denial of medical treatment,
and failure to train. *See* Nov. 2, 2016 Summ. J. Order, ECF No. 99. Defendants are Jose Luna, Southlake
Police Department Officer, sued in his individual capacity; Nathaniel Anderson, Southlake Police
Department Officer, sued in his individual capacity; Venessa Trevino, Southlake Police Department
Officer, sued in her individual capacity; Chris Melton, Southlake Police Department Officer, sued in his
individual capacity; Thomas Roberson, Southlake Police Department Officer, sued in his individual
capacity; and the City of Southlake. The Fifth Circuit affirmed summary judgment to Trevino on Plaintiff's

Circuit concluded that genuine fact issues exist as to whether certain of the officers' actions were objectively reasonable, and reversed the Court's entry of summary judgment (1) to Defendants Anderson, Luna, and Trevino on Plaintiff's false-arrest claims, and (2) to Luna on her excessive-force claim. *See Westfall v. Luna*, 903 F. 3d. 534, 546 (5th Cir. 2018). The Fifth Circuit remanded the case for further proceedings on these two issues.

On remand, this Court entered a final judgment with prejudice pursuant to Federal Rule of Civil Procedure 54(b) as to all claims by all parties on the claims that had been dismissed by this Court and affirmed by the Fifth Circuit. *See* Final J., ECF No. 190. The remaining Defendants, Anderson, Luna, and Trevino, now assert that additional information, obtained following the remand, establishes their entitlement to qualified immunity. *See* Mot. for Leave, ECF No. 212. In its discretion, the Court granted Defendants' Motion for Leave to file a Motion for Summary Judgment. The Motion for Summary Judgment (ECF No. 243) is fully briefed and ripe for review. The Court adopts the Fifth Circuit's recitation of the facts as detailed below:

> In the middle of the night in January 2014, the Southlake Police Department received a call reporting a trespass. The call was from a young woman. She reported that two teenage boys, one later identified as A.A., had entered her home without permission. She told the boys that they did not have permission to be in the house, and the boys left and walked toward the house next door. The caller was the older sister of one of A.A.'s friends. According to the caller, the boys were looking for a marijuana grinder.
>
> Shortly thereafter, Trevino and Anderson arrived at the house to which the boys had returned. The house belonged to Westfall and her husband, Monte Westfall. Anderson and Trevino knocked on the front door of the house, and Westfall opened it. Trevino identified herself, asked for A.A., and relayed the allegations against A.A. Westfall responded by explaining that A.A. is her son and that his best friend lived in the house next door. Trevino asked Westfall to go get her son. Westfall went inside the house and closed the door because it was cold outside. She began looking for her glasses, without which she is legally blind.

---

excessive-force claim, to Luna on her retaliation claim, and to Anderson, Luna, and Trevino on her denial-of-medical-treatment claims. *See* Fifth Circ. Op. 2, ECF No. 133. The Fifth Circuit also affirmed the district court's dismissal of Plaintiff's claims against Melton and Roberson, and failure-to-train claim against the City of Southlake. *Id*. In addition, the Fifth Circuit dismissed Plaintiff's appeal of the district court's sealing order for lack of jurisdiction. *Id*.

While Westfall was inside the house, the Southlake Police Department dispatcher called Westfall's home phone number. Monte answered the call. Monte believed it was a prank call and hung up the phone. By this time, Luna had arrived at the Westfall residence and began knocking loudly on the front door. The dispatcher called the house number again. A.A. answered. The dispatcher told A.A. to meet the officers outside

A.A. and another teenage boy exited the house, with a third boy joining them soon afterwards. Trevino and Anderson began questioning the three minor boys outside. During the questioning, Trevino allegedly smelled marijuana on A.A.'s hands and asked the boys about the presence of marijuana. Then, Westfall exited the house, wearing boots and a coat over her nightgown.

While outside, Westfall complained about her inability to see the officers without her glasses and, in response to accusations that she had slammed the door in their faces, explained that she had only closed the door when the police first arrived because it was cold outside. Following this exchange, the officers stopped addressing Westfall, despite repeated requests that they identify themselves, and continued to question the minor boys.

Monte brought Westfall her glasses. Because it was cold, Westfall asked the officers to move inside of the house. The officers declined. Luna then asked Westfall to move to the side with him, so he could explain the situation to her. Westfall declined, and Luna said that was okay but asked her to stop talking. Westfall asked Luna why he was being so rude. A short while later, when Westfall spoke in response to a question by Trevino directed at the boys, Luna again instructed Westfall to stop talking.

Eventually, the boys admitted to the officers that there was marijuana in the house. After learning this from Anderson, Luna proclaimed that the officers could either wait for a search warrant or one of the boys could go into the house and retrieve the marijuana. Addressing Monte, Anderson explained to him that there was marijuana in the house and that, with Monte's permission, the officers would go upstairs and confiscate it. Anderson suggested that one of the boys take them upstairs. Westfall then said, "[A.A.], go get it." A.A. went inside of the house. Anderson told Monte to also go inside, and Anderson followed him.

According to Westfall, Monte shut the door behind them. As Westfall turned to follow them into her house, Luna approached her and told her, "You are not going anywhere. You slammed the door in our face." Westfall explained that she did not slam the door in his face, told Luna she was going into her house, and reached for the doorknob of the front door. Then, Luna "body-slammed" Westfall to the ground.

Defendants describe a more dramatic exchange leading up to the body-slam. According to Defendants, Westfall began to follow Anderson, Monte, and A.A. into her house when Anderson stopped her and told her she had to stay outside with the other officers. Defendants claim that Westfall insisted on going inside, and Anderson replied that she was not going to "walk up on [him]" and that he had already given her instructions to stay outside. Luna and Trevino asked Westfall to calm down and "get back over here."

According to Defendants, Westfall continued to protest, saying, "Let me go, I don't want you people to go up there," and "stop telling me to calm down." Then, Westfall "began to pursue" Anderson into the home, approaching him from behind "at a fast pace and in an aggressive manner." It was only then, according to Defendants, that Luna "brought [Westfall] to the ground."

Luna is 5'9" and weighs 175 pounds. Westfall is 5'5" and "has a small build." Westfall landed on the corner of the brick porch on her back. Luna and Trevino then held Westfall on the ground for about five minutes. During the time that Westfall was pinned, Anderson was in the house and retrieved a metal tin containing about 2.5 grams of marijuana from inside of the house.

Luna and Trevino handcuffed Westfall and placed her in a police car. After Westfall was handcuffed, Officers Chris Melton and Thomas Roberson arrived at the Westfall residence. While in the back of the police car, Westfall asked repeatedly for medical assistance. Roberson and Luna called for medical assistance shortly after 3:00 a.m., about thirty minutes after Luna slammed Westfall to the ground. About fifteen minutes later, medics arrived, and Roberson went with Westfall to a nearby hospital. In total, less than an hour elapsed between the time Westfall was pinned and the time she was taken to the hospital.

The hospital staff noted that Westfall had numerous abrasions and bruises, bloody urine, high blood pressure, and an increased heart rate. Westfall was released from the hospital, taken to the Keller Police Department, and released on bail later that morning. Westfall was charged with interference with public duties under Texas Penal Code section 38.15, though the charges were ultimately dropped. An MRI later revealed that Westfall suffers from a herniation to the L5-S1 level of her lumbar, for which Westfall has received therapy and injections and is currently contemplating surgery.

*Westfall*, 903 F. 3d. at 534–546. To the extent that new evidence exists, the Court will set forth the relevant facts in Section III. When disputed, the facts are viewed in the light most favorable to Plaintiff, the nonmoving party.

## II.    LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co*., 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations—such that "reasonable minds could differ as to the import of the evidence"—the Court must deny the motion for summary judgment. *Id*.at 250.

## III.    ANALYSIS

Defendants contend they are entitled to summary judgment on Plaintiff's false-arrest claim under *Heck v. Humphrey* because the criminal proceeding related to the charges against her for interference with public duties did not terminate in her favor. Defs.' Mot. Summ. J. 1, ECF No. 243 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).   Additionally, Defendants argue they are entitled to summary judgment based on qualified immunity on Plaintiff's false-arrest and excessive-force claims. *Id*. In response, Plaintiff argues that the false-arrest claim is not barred by *Heck v. Humphrey* and that Defendants are not entitled to qualified immunity on her false-arrest claims because they did not have consent to search the Westfall residence. Pl.'s Resp. 1, ECF No. 247.   Additionally, Plaintiff maintains that the Law of the Case Doctrine precludes Defendants from moving for summary judgment on the excessive-force claim. *Id*. at. 1. The Court takes up each issue in turn.

### A.    *Heck v*. *Humphrey*

The Supreme Court in *Heck v. Humphrey*, which involved a malicious-prosecution claim, set forth the following rule:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or

sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87. Courts interpreting *Heck* have framed the rule as follows: "the underlying criminal proceeding must terminate in the plaintiff's favor before [the] claim accrues." *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995), *abrogation on other grounds recognized in Mapes v. Bishop,* 541 F.3d 582, 584 (5th Cir. 2008) (involving a malicious-prosecution claim). The Fifth Circuit explained that "an order of dismissal reflecting an affirmative decision not to prosecute [is] [an] example[] of such a termination." *Id*. However, the Fifth Circuit has also held that, for purposes of *Heck*, a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant. *Morris v. Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019). "Pre-trial diversion is an alternative to prosecution that diverts certain offenders from traditional criminal justice processing into a program of supervision. The offenders must acknowledge responsibility for their actions, but need not admit guilt." *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994).

As previously stated, Defendants argue that Plaintiff is barred from bringing her false-arrest claim by *Heck*. Defs.' Mot. Summ. J. 11, ECF No. 243. Defendants posit that for Plaintiff to bring a false-arrest claim against a police officer, the criminal proceeding against her must terminate in her favor. *Id*. at 10 (citing *Taylor*, 36 F. 3d at 455). Also, Defendants contend that Plaintiff entered into a pre-trial diversion agreement or pre-trial dismissal, which does not terminate the proceeding in Plaintiff's favor. *Id*. at 11. Specifically, Defendants argue that Plaintiff testified at her deposition that the criminal proceeding against her terminated when she and the district attorney agreed to dismiss the case. *Id*. Defendants contend that the district attorney agreed to dismiss the case if Plaintiff submitted a "Letter of Good Acts" from the state bar. *Id*. Finally, Defendants

argue that Plaintiff conceded the dismissal documents did not vindicate her acts. *Id.* Thus, Defendants contend that the false-arrest claims should be dismissed under *Heck*. *Id.*

Plaintiff counters that the *Heck* bar does not apply to her false-arrest claim. Pl.'s Resp. 1, ECF No. 247. First, she contends that the criminal matter *was* terminated in her favor, as she was not convicted, not sentenced, did not enter a plea agreement, did not enter a pre-trial diversion program, did not complete any community service hours, and the prosecutor dismissed her case without any signature or agreement from her. *Id.* Plaintiff argues that, at the very least, there is a genuine dispute of material fact as to whether there was an "agreement" between her and the district attorney. *Id.*

Additionally, Plaintiff contends that *Heck* sets forth a defense to a false-arrest claim, not an element of her prima facie case, and, therefore, Defendants bear the burden of proof. *Id.* at 7. Plaintiff characterizes the *Heck* defense as one of claim preclusion. *Id.* Specifically, she argues that *Heck* is an affirmative defense on which Defendants have the burden of pleading and proof. *Id.* at 10. Also, Plaintiff contends that Defendants forfeited their opportunity to raise the *Heck* bar when the case went up on appeal. *Id.* at 12.

Even assuming, arguendo, that *Heck* applies, Plaintiff contends that Defendants cannot meet their burden beyond peradventure on the affirmative defense. *Id.* at 12. Plaintiff emphasizes that in her case, unlike in *Taylor v. Gregg*, *supra*, there has been no pre-trial diversion agreement under which she acknowledged responsibility for the action or evidence that she entered into a program of supervision. *Id.* at 9. Plaintiff further argues that a plea bargain cannot be assumed from a silent record, and that Defendants merely point to an unsigned plea recommendation form and the state's dismissal paperwork, which indicate the charges were dropped based on completion of community service. *Id.* at 14. But, Plaintiff maintains, there was no plea agreement under which

she agreed to perform community service, and the notation "Comm Serv" was in error. *Id.* at 13 n. 5. Essentially, Plaintiff argues that the district attorney's decision to drop the charges against her and to include a community service notation was the prosecutor's affirmative decision not to prosecute. *Id.*

In any case, Plaintiff argues that any alleged pre-trial diversion agreement is not binding because, under Texas law, pre-trial diversion agreements are contracts, and for a written or oral contract to be binding, there must be both acceptance and a meeting of the minds. *Id.* at 14. Here, Plaintiff underscores that she has consistently taken the position that no agreement existed. *Id.* Further, she argues there is no evidence that she was subject to any of the conditions typically imposed under pre-trial diversions such as a probationary period, fines, or requirements to perform community service. *Id.* at 15.

Finally, in the event the Court finds Defendants successfully raised a *Heck* defense, Plaintiff argues it should not be given effect because she was not taken before a magistrate, and state law did not provide fair procedures for litigation of her constitutional claims. *Id.* at 16.

In reply, Defendants primarily take issue with Plaintiff's representation of the *Heck* doctrine as an affirmative defense. Defs.' Reply 15, ECF No. 251. Defendants argue *Heck* is not an affirmative defense and that the favorable termination requirement of the *Heck* bar is an element of accrual of Plaintiff's claim. *Id.* Defendants contend that because the dismissal leaves open the question of guilt or innocence, Plaintiff's case did not terminate in her favor. *Id.* at 16.

The Court first turns to the issue of whether *Heck* is an affirmative defense and, if so, who bears the burden of proof. The Fifth Circuit has held that a *Heck* defense "is not waived by failure to plead it as an affirmative defense and can be brought by motion at trial." *See Walker v. Munsell,* 281 F. App'x 388, 389 (5th Cir. 2008) (citing *Watson v. New Orleans City,* 275 F.3d 46, 2001 WL

1268716, at \*3 (5th Cir. Oct.16, 2001)). In *Watson*, the court noted that while defendants did not sufficiently put plaintiffs on notice of the *Heck* defense, "waivers of defenses based on grounds rooted in considerations of state sovereignty are applied less harshly than other waivers." 275 F.3d at 46. Importantly, *Walker* does not characterize the *Heck* bar as an affirmative defense. *Id*. Based on *Walker* and *Watson*, the Court rejects Plaintiff's argument that the *Heck* bar is an affirmative defense and finds it is proper to consider the *Heck* defense at this stage of the litigation. *Walker*, 281 F. App'x at 389; *see also Edwards v. Balisok*, 520 U.S. 641, 649 (1997) ("[A] claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed.").

Next, the Court considers which party bears the burden of proof regarding whether the proceeding has terminated in Plaintiff's favor. The Fifth Circuit has held that whether a proceeding has terminated in a plaintiff's favor is a "factual question that must be answered in the first instance by the district court." *Brandley*, 63 F. 3d at 199. Under Fifth Circuit precedent, it is the plaintiff's burden to establish that the proceeding terminated in her favor. *See Hoog-Watson v. Guadalupe Cty., Tex.*, 591 F.3d 431, 435 (5th Cir. 2009) (citing *Brandley*, 63 F. 3d at 199; *Kreuger v. Reimer*, 66 F. 3d 75, 76 (5th Cir. 1995)).

Consequently, with respect to her false-arrest claim, to defeat Defendants' motion for summary judgment predicated on *Heck,* Plaintiff must marshal evidence sufficient to convince a reasonable jury that the proceeding terminated in her favor. *Hoog-Watson*, 591 F.3d at 435 (explaining that when a defendant's motion for summary judgment includes a *Heck* trigger, "the plaintiff is forced to muster proof of *Heck's* favorable termination requirement to avoid dismissal.").

The favorable termination requirement varies across different types of cases. For example, courts have applied the *Heck* bar where a plaintiff had been convicted and did "not allege that any revocation proceeding ha[d] been reversed, expunged, set aside by a state court, or called into question by a federal court's issuance of a writ of *habeas corpus.*" *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995). Additionally, courts have held that *Heck* applies when the termination appears to be a "middle ground between conviction and exoneration." *Morris*, 768 F. App'x at 301. For example, participation in a pre-trial intervention program, which resulted in the dismissal of the plaintiff's criminal charges "after the successful completion of a probationary period," was a conviction for the purposes of *Heck. Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 507 (M.D. La. 2013). Other courts have gone as far as to say that "even where there has been no conviction on criminal charges, before a Section 1983 damages claim can be pursued[,] a Plaintiff must nevertheless show that the charges against him were dismissed in a manner consistent with innocence." *Fritz v. Akosomitas*, No. 2:13-3532-RMG, 2015 WL 1346311, at *5 (D.S.C. Mar. 23, 2015), *aff'd*, 610 F. App'x 268 (4th Cir. 2015). And some courts have even held, "where criminal charges are *nolle prossed,* and therefore no conviction was obtained, *Heck* still bars a claim for damages unless the Plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence."[2] *Jackson v. Gable*, No. C.A. 0:052591 HFF BM, 2006 WL 1487047, at *6 (D.S.C. May 25, 2006); *see also Campbell v. Smith*, No. 9:08-4078 DCN, 2009 WL 3739351, at *6 (D.S.C. Nov. 4, 2009); *Cooley v. City of Waynesboro*, No. 2:16-CV-211-HTW-LRA, 2017 WL 4156193, at *7 (S.D. Miss. Sept. 19, 2017)(looking at the underlying dismissal, the court stated it was "persuaded that the order of *nolle prosequi* entered in Cooley's underlying state convictions

---

[2] *See nolle prosequi*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("*n.* [Latin 'not to wish to prosecute'] (17c) 1. A legal notice that a lawsuit or prosecution has been abandoned. 2. A docket entry showing that the plaintiff or the prosecution has abandoned the action. — Often shortened to *nolle.* — Also termed (in slang) *no-paper.*")

was not a 'favorable termination' for purposes of *Heck*"). In cases where charges are withdrawn, abandoned, or not prosecuted, courts generally rely on the malicious-prosecution case law to define the favorable termination requirement.[3] *See, e.g., Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) ("In the context of § 1983 malicious prosecution cases, *Heck's* bar is coextensive with the favorable termination requirement."); *Roesch v. Otarola*, 980 F.2d 850, 854 (2d Cir. 1992) (holding that the requirement that a § 1983 plaintiff receive favorable termination applies equally to claims of false arrest, false imprisonment, and malicious prosecution).

Here, the Court finds there are genuine disputes of material fact as to whether the criminal proceeding terminated in Plaintiff's favor. The State's Motion to Dismiss indicates the district attorney dismissed the case for the following reason: "Other. Specify: Completed Com. Ser." App. Supp. Defs.' Reply (Westfall Dismissal Order), ECF No. 241-1. Plaintiff maintains that this notation was a mistake and argues the charges against her were dismissed by an independent decision of the Tarrant County district attorney's office. Pl.'s Resp. 14, ECF No. 247; App. Supp. Pl.'s Mot. (Westfall Dep.) 308:1–6, App. 139, ECF No. 175 ("It was not conditioned. I don't believe. They said they needed something for the file."); App. Supp. Pl.'s Resp. (Pl.'s Resp. Interrog. No. 20), App. 082, ECF No. 250   Plaintiff's position, however, is not elucidating as to why the charges were dismissed. The State's Motion to Dismiss the charges against her for interference with public duties included "prosecutorial discretion" as a box that the district attorney did not check off, for example, as the reason for dismissal of Plaintiff's case. App. Supp. Defs.'

---

[3] In a malicious-prosecution claim, the plaintiff also has the burden to show that the proceeding terminated in his favor. "A termination is not favorable to the accused, [however], if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. Indeed, it is hornbook law that 'where charges are withdrawn or the prosecution is terminated by reason of a compromise into which the accused has entered voluntarily, there is no sufficient termination in favor of the accused.'" *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 197, 734 N.E.2d 750, 754 (2000)(quoting Prosser and Keeton, *Torts* § 119, at 875 (5th ed.1984)) (alterations omitted).

Reply (Westfall Dismissal Order), ECF No. 241-1. Additionally, in the record provided by Plaintiff, there is a document which at the top reads, "Tarrant County District Clerk Online," which also incudes the phrase "COMPLETED COMM SERVICE." App. Supp. Pl.'s Resp. Ex D (Clerk online), ECF No. 249. Nevertheless, Plaintiff asserts that she never completed any community service. App. Supp. Pl.'s Resp. (Pl.'s Resp. Interrog. No. 20), App. 082, ECF No. 250 ("Plaintiff did not perform any community service as a precondition to receive dismissal.")

Defendants claim that the district attorney would drop the charges *if* Plaintiff submitted a letter of good acts and that Plaintiff entered into a pre-trial diversion agreement. Defs.' Mot. Summ. J. 11, ECF No. 243. However, in her deposition, Plaintiff states, "[t]here was not a plea agreement. There was a dismissal." App. Supp. Pl.'s Mot. (Westfall Dep.) 307: 24–25, App. 139, ECF No. 175. Further, when Plaintiff was asked, "And the terms of that dismissal are they would dismiss if you would tender a letter of good acts?" she responded "It was not conditioned. I don't believe, on the dismissal. They said they needed something for the file." *Id*. at 308: 1–6. She also was asked whether it was her position that the agreement vindicated her acts, and she responded "yes." *Id*. at 309: 16-19. Finally, when asked whether the dismissal document says that she is completely vindicated of the charges, Plaintiff responds "it does not say that." App. Supp. Pl.'s Mot. (Westfall Dep.) 309: 24 –310:1, App. 139–140, ECF No. 175. Also, in her answer to Defendants' interrogatories, Plaintiff states that there was no plea agreement, no pre-trial diversion agreement, and that she received a plea offer that she rejected. *See* App. Supp. Pl.'s Resp. (Pl.'s Resp. Interrog. No. 20), App. 082, ECF No. 250. On this record, the Court finds it cannot make a credibility determination in light of competing inferences regarding the dismissal of Plaintiff's charges and whether the proceedings terminated in her favor. *Anderson*, 477 U.S. at 255.

For the foregoing reasons, the Court concludes that Plaintiff has raised genuine disputes of material fact regarding whether the criminal proceeding terminated in her favor. Accordingly, the Court **DENIES** Defendants' motion for summary judgment with respect to Plaintiff's false-arrest claim insofar as Defendants' motion is predicated on the *Heck* bar.

### B.      Qualified Immunity

In *Westfall v. Luna*, the Fifth Circuit held that the knock and talk nature of the officers' initial interaction with the Plaintiff put into question the officers' ability to have obtained valid consent. 903 F. 3d. at 546. The Fifth Circuit instructed that if this Court determined on remand that the knock and talk could not itself justify the Plaintiff's alleged consent to search, it would then need to consider whether Plaintiff's alleged consent was an independent act of free will. *Id*. at 545–546 (citing *United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002) (outlining the three-factor test)). But, "[a]ssuming arguendo that [Plaintiff] did give valid consent, taking the facts in the light most favorable to [Plaintiff]," the Fifth Circuit reasoned, "her consent was withdrawn when she said she did not want the officers to go upstairs." *Id*. Also, the Fifth Circuit instructed this Court to consider the knock and talk nature of the officers' initial interaction with Plaintiff.[4] *Id.*

Further, the Fifth Circuit reversed the Court's grant of summary judgment based on qualified immunity to Luna on Plaintiff's excessive-force claim, holding there "is a fact issue as to whether a reasonable officer would have concluded that there was a need for force." *Westfall,* 903 F. 3d. at 549.

### 1.      False Arrest

### a.      The Knock and Talk

---

[4] In light of the Fifth Circuit's reasoning, on May 6, 2019, the Court issued an order holding that the Law of the Case Doctrine does not apply to the knock and talk issue. *See* May 6, 2019 Order, ECF No. 210.

Defendants move for summary judgment, arguing that their approach of the Westfall residence did not exceed the permissible bounds of a knock and talk or a *Terry* investigation and was not coercive. Defs.' Mot. Summ. J. 12, ECF No. 243 (citing *Terry v. Ohio*, 329 U.S. 1 (1968)). Defendants contend that after knocking on the Westfall residence door, Trevino detected a strong odor of marijuana as the suspects had opened an upstairs window. *Id*. at 13. Defendants contend that a distinct odor of marijuana coupled with the identification of the suspect gave them probable cause or a reasonable suspicion to believe unlawful activity was being conducted in the home. *Id*. Defendants argue that on this basis they were no longer conducting a knock and talk, rather they were conducting a *Terry* stop. *Id*. (citing *United States v. Walters*, 529 F. Supp. 2d 628, 642 (E.D. Tex. 2007)). Further, Defendants rely on *Florida v. Royer* 460 U.S. 491, 498 (1983) for the proposition that they could temporarily detain and question an individual. *Id*. at 13. Defendants' main contention is that *Terry* investigations do not have the same limitations as a knock and talk, and, therefore, the Fifth Circuit's analysis of the contact as a knock and talk is "clearly erroneous." *Id*. at 19.

Additionally, Defendants claim that Anderson walked along the front of the home to a gated drive through area and did not enter the side yard or back yard, comporting with the limitations of a *Terry* search. *Id*. Defendants also rely on the testimony of A.A. to argue there is no evidence the Defendants went beyond the front yard or porch area, stayed longer than was reasonable, or knocked on the back door of the Westfall residence. *Id*. at 14.

Plaintiff responds that for Defendants to detain her under *Terry*, they must point to specific facts and rational inferences demonstrating that she—not any third party—was allegedly involved in criminal activity. Pl.'s Resp. 22, ECF No. 247. Plaintiff argues that the alleged criminal activities of the minors do not create reasonable suspicion or probable cause as to her arrest. *Id*. at

22.  Further, Plaintiff distinguishes *Terry* and *Royer*, arguing that neither case involved Fourth Amendment protections to the home. *Id*. at 22.

Turning to the knock and talk analysis, Plaintiff argues that after she closed the door, Anderson peeked through her windows, Defendants banged on her door, and Anderson may have shined a flashlight into the front door windows. *Id*. at 23–24. Additionally, Plaintiff argues that genuine disputes of material fact exist as to whether Defendants went beyond the front yard or porch area. *Id*. Specifically, Plaintiff relies on Anderson's deposition testimony that he shined flashlights into the windows and backyard. *Id*. at. 24. Also, Anderson admitted at his deposition that he went into the yard behind the gate. *Id*. And, Anderson questioned the juveniles about the gaming system downstairs, which can only be seen from the backyard windows. *Id*. Finally, Plaintiff underscores that once she had closed the door, the knock and talk had ended. *Id*.

The Court frames its analysis in light of the Fifth Circuit's opinion in *Westfall v. Luna*. The Fifth Circuit explained that in this case, "given the fact that [Defendants] went to [Plaintiff's] home at 2:00 a.m., continued to knock on [her] door after she closed it, called her home repeatedly, looked through the windows of her home, and walked around her property, even after she closed the door, [the search] may have been an unreasonable search that rendered any subsequent consent invalid." *Westfall,* 903 F.3d at 545–46.  Importantly, the Fifth Circuit stated, "[t]he district court did not consider this argument and should do so on remand." *Id.* at 546.

"A police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Kentucky v. King,* 563 U.S. 452, 469–470 (2011)). Similar to a visitor, the officer must "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8. The purpose of a knock-and-talk investigation

is "to make investigatory inquiry, or, if officers reasonably suspect criminal activity, to gain the occupants' consent to search." *Hernandez*, 392 F. App'x at 352 (citation omitted). "The purpose . . . is not to create a show of force, nor to make demands on occupants, nor to raid a residence." *Id.* Additionally, the Supreme Court has underscored that "when it comes to the Fourth Amendment, the home is first among equals." *Jardines*, 569 U.S. at 6. And the area "immediately surrounding and associated with the home" is "part of the home itself for Fourth Amendment purposes." *Oliver v. United States*, 46 U.S. 170, 180 (1984).

"Where officers continue an illegal search or seizure, any consent given after that fact is invalid, unless it was an independent act of free will." *Westfall*, 903 F.3d at 545. The Fifth Circuit in *Hernandez* explains the two relevant tests regarding consent. 279 F.3d at 307. Under the first test, to determine whether consent was voluntarily given, courts use a six-factor test:

> 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found.

*Id*. No single factor in this test is dispositive. *Id.* Under the second test, to determine whether the defendant's consent was an independent act of free will, breaking the causal chain between the consent and the constitutional violation, courts consider three factors: 1) the temporal proximity of the illegal conduct and the consent; 2) the presence of intervening circumstances; and 3) the purpose and the flagrancy of the initial misconduct. *Id*.

In this case, viewing all evidence in the light most favorable to Plaintiff, the nonmoving party, the Court finds that Plaintiff has raised genuine disputes of material fact regarding the scope of the knock and talk. For example, Defendants argue there is no evidence that they went beyond the front yard or porch area. Defs.' Mot. Summ. J., ECF No. 243. However, Plaintiff notes that in

his deposition, Anderson states, "That's the only place I was at to shine a flashlight other than towards the back yard when I walked along the front of it." App. Supp. Pl.'s Mot. (Anderson Dep.) 231: 17–21, App. 229, ECF No. 175. Additionally, when questioning the juveniles on the night of the incident, Anderson asks, "So what is the game downstairs?" App. Supp. Pl.'s Mot. (Transcript) 225:45, App. 292, ECF No. 175. Plaintiff argues, and points to evidence, that the gaming system can only be seen from the backyard. *See* Monte Westfall Decl. ¶ 10, App. 009, ECF No. 86. Also, in his interview, Anderson explains that after the initial interaction with Plaintiff, she "slammed the door" on them, and:

> at that point [they] assumed that she was going upstairs to get the kids. . . at some point during that process [they] requested dispatch . . . someone answered the phone and hung up in [their] face. So [they] continued pounding on the door . . . [he] thought [he] heard the kids come out the back door, so [he] walked along the side of the house and went to the gate, gated drive thru area . . .

App. Supp. Pl.'s Mot. (Interview), App. 004, ECF No. 248. The Court finds that these factual disputes preclude it from adequately addressing the reasonableness of the knock and talk.

Also, Defendants ignore the Fifth Circuit's specific instructions and instead argue the knock and talk became a *Terry* stop. The Court finds *Terry* inapposite and Defendants' application of *Terry* confusing. First, *Terry* creates an exception to warrantless search of a defendant when there is reasonable suspicion of criminal activity. The Supreme Court stated that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21. Defendants argue that "[e]ven presuming that the initial contact was a 'Knock-and-Talk,' and that Defendants lacked Probable Cause at the beginning of the contact, once A.A. admitted to Trespass and Possession of Marijuana, the Southlake Defendants certainly had probable cause . . . " Defs.' Mot. Summ. J. 20, ECF No. 243. At this time, Defendants contend the

officers were conducting a *Terry* stop, "not a knock and talk." *Id.* at 19. Plaintiff argues that *Terry* is inapplicable because she was not the suspect and *Terry* did not involve the home. Pl.'s Resp. 22, ECF No. 247. Defendants contend that that they do not argue that "*Walters* allows officers to search a home under *Terry*." *Id.* at 10. Further, they argue that all the interactions took place outside the Plaintiff's home." *Id.* at 18.

Here, the Court finds that Defendants lack any support for their argument that "the Fifth Circuit's analysis of the contact as a 'knock and talk' is clearly erroneous." *Id.* The issue before the Court on remand is whether the knock and talk was unreasonable, and, if so, whether consent to search the home was an independent act of free will. *Terry* has no bearing on either question. *Westfall*, 903 F.3d at 545 ("Where officers continue an illegal search or seizure, any consent given after that fact is invalid, unless it was an independent act of free will.") As such, the Court concludes that Defendants' reliance on *Terry* is misdirected and turns to the consent analysis.

### b.    Consent

There are two levels of the consent analysis: first whether Plaintiff gave valid consent (the six-part test); and second, if the knock and talk rendered Plaintiff's consent invalid, whether her consent was a voluntary act of the will (three-part test). *See Hernandez*, 279 F.3d at 307. Defendants only briefed the former and ignored the latter—whether any alleged consent given was an independent act of the will.

First, Defendants argue that Monte and Plaintiff consented to the search because a "gesture reasonably interpreted as intent that they enter, and a search after an admission to possession of drugs, has been found to be reasonable.'" Defs.' Mot. Summ. J. 15, ECF No. 243 (citing *United States v. Lewis*, 476 F. 3d 369, 381 (5th Cir. 2007)). Defendants further contend that when Anderson asked Monte for consent to search the home for the limited purpose of obtaining the

marijuana, "Plaintiff Westfall interjected, and gave permission for Southlake Defendants to enter the home for the limited purpose of seizing the marijuana." *Id*. at 15.

Defendants also argue Plaintiff's consent was voluntary based on the six-factor test, claiming that here: (1) all persons made voluntary contact with the police and none was physically restrained prior to the search; (2) the police did not display weapons and did not threaten anyone; (3) there was no evidence that Monte failed to cooperate and the evidence shows Plaintiff was cooperative, explicitly inviting Defendants into the home; (4) Plaintiff is an attorney; (5) there was no indication that Plaintiff was unaware of the right to consent to a search of her home; and (6) Plaintiff knew incriminating evidence would be found. *Id.* at 16–17, ECF No. 243. Finally, on the issue of whether consent was revoked, Defendants emphasize that Plaintiff has stated under oath, "I am the one who said you could go up there." *Id*. at 18.

Viewing all evidence in the light most favorable to Plaintiff, the Court finds genuine disputes of material fact exist as to the basis, if any, for consent to search the home. For example, Plaintiff stresses that she never gave Defendants consent to search the home. *See* Pl. Decl. ¶ 16, App. 002, ECF No. 86 ("The plan as outlined by Luna was for one of the boys to go in and retrieve the marijuana and bring it back outside so as to avoid a search by the police of our house.") Plaintiff argues that Defendants characterize her instruction for her son to retrieve the marijuana as sufficient consent. However, she points out that Defendants do not identify any evidence where Plaintiff gives the *officers*, not her son, consent to search the home. *Id*. at 28. Moreover, the Court notes that the Fifth Circuit has already determined that Monte's silence and obedience could not be understood as consent. *Westfall*, 903 F.3d at 546 n. 6. Similarly, here the Court finds Plaintiff's silence or passivity cannot form the basis for consent to enter. *Id*. (citing *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002)).

Turning to the issue of whether consent was revoked, the Fifth Circuit relied on the phrase "I don't want you people to go up there," to conclude that consent was withdrawn. *Westfall*, 903 F. 3d 547. Here, Plaintiff has stated under oath, "I am the one who said you could go up there." Defs. Mot. Summ. J. 18, ECF No. 243. Thus, whether consent was revoked based on this phrase no longer appears to be at issue. Nevertheless, factual disputes remain related to whether Plaintiff ever "voluntarily" consented.

Because fact issues remain concerning whether a reasonable officer could conclude that he or she was performing a duty or exercising lawful authority when searching the Westfall residence, the Court must deny Defendants' motion for summary judgment based on qualified immunity. The Court finds that there is not only conflicting evidence related to the scope of the knock and talk, but there is also inconsistent evidence as to the whether any alleged consent was voluntary.[5] *Anderson*, 477 U.S. at 250 (When there is some support for the disputed allegations—such that "reasonable minds could differ as to the import of the evidence"—the Court must deny the motion for summary judgment). Therefore, the Court **DENIES** Defendants' motion for summary judgment based on qualified immunity as to Plaintiff's false-arrest claim.[6]

## B.      Excessive Force

Defendants also move for summary judgment based on qualified immunity on Plaintiff's excessive-force claim. To establish a Fourth Amendment excessive-force claim, a plaintiff must "show that she suffered (1) an injury that (2) resulted directly and only from the use of force that

---

[5] Given the fact issues on the scope of the knock and talk, the Court need not reach the issue of whether any alleged consent was an independent act of the will. Further, given the lack of briefing, the Court declines to sua sponte analyze this fact-based issue.

[6] The Court also notes that the Fifth Circuit did not consider Defendants' exigent circumstances argument. *See Westfall*, 903 F. 3d at 545. ("[W]e do not consider Defendants' exigent-circumstances argument, which, in any event, appears to have been forfeited and lacking in merit.")

was excessive to the need and that (3) the force was objectively unreasonable." *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The Fifth Circuit held that Luna's use of force was objectively unreasonable. *Westfall*, 903 F.3d at 547.

In light of the Fifth Circuit's ruling, to prevail on their motion for summary judgment, Defendants would need to show that the Law of the Case Doctrine does not apply. The Law of the Case Doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006) (internal quotations omitted). The Law of the Case Doctrine encompasses issues "decided by necessary implication as well as those decided explicitly." *Id.* (citing *Alberti v. Klevenhagen,* 46 F.3d 1347, 1351 n. 1 (5th Cir. 1995)). Exceptions to the doctrine allow reexamination of issues decided on appeal only if "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Fuhrman*, 442 F.3d at 897.

Here, Defendants urge the Court to consider that new evidence has been produced that shows (1) Luna attempted to deescalate the situation without the use of force; (2) Luna's use of force was proportional to the threat Plaintiff posed and the force Plaintiff used to resist arrest; and (3) the injuries Plaintiff sustained were de minimis injuries that cannot support an excessive-force claim. Defs.' Mot. Leave 17, ECF No. 242. Defendants contend the Fifth Circuit's ruling is clearly erroneous and works a manifest injustice because the Plaintiff's version of events should be disregarded by the Court. *Id*.

Plaintiff maintains that the excessive-force claim remains the Law of the Case, but, in the alternative, incorporates her previous pleadings by reference. Pl.'s Resp. 2, ECF No. 247. In their

reply, Defendants fail to address the merits of Plaintiff's arguments related to the excessive-force claim. Defs.' Reply 9, ECF No. 251. Instead, Defendants argue that Plaintiff has ignored the "new evidence." *Id*.

The Court finds that the Law of the Case Doctrine precludes Defendants' motion for summary judgment based on qualified immunity on the excessive-force claim. Although Defendants have introduced additional evidence, it is not "substantially new" evidence. *Fuhrman*, 442 F.3d at 896. The additional depositions and medical records do not resolve the fact issues identified by the Fifth Circuit. *Westfall*, 903 F.3d at 548–49. In applying the *Graham* factors, the Fifth Circuit determined that fact issues existed as to whether a reasonable officer would have thought that Plaintiff posed an immediate threat.[7] *Id*. Further, the Fifth Circuit stated, "there is a fact issue as to whether a reasonable officer would have concluded that there was a need for force." *Id*.

On remand, Defendants' new evidence merely supports their prior account of the events, and Plaintiff's testimony of the incident in question remains the same; therefore, the same underlying fact issues remain. *See Westfall*, 903 F.3d at 549 ("And taking the facts in the light most favorable to Westfall—that she was attempting to enter her house but not actively resisting the officers—a jury could reasonably find that the *degree* of force Luna used—slamming Westfall onto her brick porch—did not match the need.") Also, relevant to Defendants' argument—that Plaintiff's version of events should be ignored—the Fifth emphasized that "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Westfall*, 903 F.3d at 548–49 (citing *Darden v. City*

---

[7] In *Graham v. Connor*, the Supreme Court explained that "[e]xcessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" 490 U.S. 386, 396 (1989). The "*Graham* factors" thus refer to the fact-intensive balancing test set forth by the Supreme Court in that case.

*of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018). Importantly, the Fifth Circuit held in *Westfall* that the "audio is similarly unhelpful." *Id*. Accordingly, on this record the Court finds that there is no substantially new evidence such that the Court should disregard Plaintiff's version of events. Also, for the reasons previously stated, the Court concludes the Law of the Case Doctrine applies and, accordingly, **DENIES** Defendants' Motion for Summary Judgment based on qualified immunity with respect to Plaintiff's excessive-force claim.

IV.     **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (ECF No. 243) **with prejudice**. Remaining for trial are Plaintiff's false-arrest claims against Defendants Anderson, Luna, and Trevino, and her excessive-force claim against Defendant Luna. The Court will set this matter for trial by separate order.

**SO ORDERED** on this **19th day** of **August, 2019**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**